UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GAIL ANDERSON,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No. 3:14-cv-05696-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On November 15, 2006, plaintiff filed an application for SSI benefits, alleging disability as of January 1, 2005. *See* Dkt. 9, Administrative Record ("AR") 325. In a decision dated September 1, 2009, an administrate law judge found the claimant not disabled, and plaintiff

ORDER - 1

appealed this decision. *See id.* On May 17, 2012, this Court issued an order reversing the decision and remanding the case for further administrative proceedings, finding the administrative law judge improperly concluded the claimant was not disabled. *See* AR 365-381. Pursuant to the order, the Appeals Council ("AC") vacated the September 1, 2009 decision and directed an administrative law judge to offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision. *See* AR 384.

A new hearing was held before a different administrative law judge ("the ALJ") on February 21, 2013, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 343-64. On April 11, 2013, the ALJ issued a recommended decision, determining plaintiff to be not disabled. *See* AR 323-42. In a final decision dated July 2, 2014, the AC reviewed additional evidence and argument submitted by plaintiff and found plaintiff to be not disabled from her application date through the date of the ALJ's recommended unfavorable decision. *See* AR 306-19.

The Commissioner "is empowered to affirm, modify or reverse the ALJ's decision. Such decision then becomes final and is binding upon the parties unless review is sought in district court." *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). Where the AC modifies an ALJ's decision, the task of this Court "is to review the decision of the Appeals Council under the substantial evidence standard, not the decision of the ALJ." *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986). This Court has statutory jurisdiction to review "any final decision of the Commissioner of Social Security made after a hearing." 42 U.S.C. § 405(g). Here, the AC decision of July 2, 2014, issued after plaintiff's February 21, 2013 hearing is "the final decision of the Commissioner of Social Security." AR 306.

ORDER - 2

On September 3, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 1. The administrative record was filed with the Court on November 7, 2014. *See* Dkt. 9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, because the AC erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the record; and (4) in assessing plaintiff's residual functional capacity ("RFC"). For the reasons set forth below, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision to deny benefits be affirmed.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test

ORDER - 3

requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (*quoting Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.      The AC's Evaluation of the Medical Evidence in the Record

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* At step two of the evaluation process, the Commissioner must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85-28, 1985 WL 56856 *3.

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 4

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen*, 80 F.3d at 1290.

To be determined to have a disability, plaintiff must further establish that she is unable to "to engage in any substantial gainful activity" due to the medically determinable impairment, "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Not only must the impairment itself last or be expected to last for 12 months, but those work-related limitations stemming therefrom alleged to be disabling also must last for the requisite time period. *See Barnhart v. Walton*, 535 U.S. 212, 217-222 (2002) (upholding defendant's interpretation of Social Security Act's definition of "disability" as requiring that both medically determinable impairment *and* resulting inability to engage in substantial gainful activity must last for "not less than 12 months"); *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (upholding decision by ALJ to give physician's opinion regarding inability to tolerate sedentary or light work "little weight" in assessing claimant's "long-term functioning" in light of that physician's decision two months later to release claimant to full-time work).

ORDER - 5

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence

ORDER - 6

has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

      a.     *Plaintiff's carpal tunnel syndrome*

Here, the AC adopted the ALJ's decision that plaintiff's carpal tunnel syndrome ("CTS") was not a severe impairment because any limitations to work activities were not severe and it had not been present or expected to be present for 12 months. *See* AR 310, 315, 333-34. Substantial evidence supports the AC's finding that plaintiff did not meet her burden. As noted by the AC, plaintiff was diagnosed with CTS in her right hand in October of 2012 and underwent release surgery in February of 2013 to relieve symptoms and improve functioning. *See* AR 795, 820. In July of 2013, plaintiff's treating physician stated that plaintiff's "hands were fine" and that she had no limitations in fingering, handling, or feeling. AR 839.

Plaintiff argues that a treating physician's note from February of 2013 stating she "had pain and paresthesias in both hands for about a year" indicates the duration requirement was met. *See* AR 819. However, this note alone does not provide any evidence that these symptoms

ORDER - 7

actually affected plaintiff's ability to perform basic work-related activities. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (symptoms alone are not sufficient to establish a medically determinable impairment). Neither are a finding of associated tendonitis or a positive Phalen's test sufficient evidence of work-related limitations. *See* AR 500, 819. Plaintiff also argues the AC did not address the CTS in her left hand; however, both plaintiff herself and her physicians described any impairment in her left hand as only mild. *See* AR 347, 795. Lastly, plaintiff argues that this condition, even if not severe, must be considered in assessing her RFC. The AC expressly did so, however, accounting for all limitations supported by the medical evidence, including adding push and pull restrictions. *See* AR 315-16. Therefore, the AC did not err in determining plaintiff's CTS not to be a severe impairment lasting 12 months.

      b.    *Dr. Hamill*

Plaintiff argues that the AC erred by failing to provide proper reasons for giving only partial weight to the opinions of treating physician John Hamill, M.D. Specifically, she asserts the AC isolated only the medical evidence in the record that supports its decision and than took that evidence out of context. As an example of this, plaintiff points to a May 2009 chart note, in which Dr. Hamill stated that he thought her limitations to be "substantial", that any improvement she would see from "an aggressive rehabilitative program" was "limited", that "from an economic standpoint" it was hard to think "of a good job that she would be able to do well within the limits," and that "[f]urther testing with a true physical capacity evaluation for more objective testing may be helpful and warranted." AR 588.

To the extent any error was committed by the AC in not expressly discussing this chart note, the Court finds it to be harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's

ORDER - 8

ultimate disability conclusion); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision."). First, Dr. Hamill gave no indication what specific limitations he believed to be substantial. Second, as the AC points out, Dr. Hamill's statement that further objective testing *may* be helpful and warranted indicates he "was not certain of [plaintiff's] true capabilities and limitations." AR 314. This interpretation of Dr. Hamill's opinion is reasonable, and therefore will not be overturned.

Plaintiff also points to an early April 2009 chart note, in which Dr. Hamill assessed her with hyperlipidemia and diabetes – noting them to be "stable, but not ideally controlled," – as well as chronic pain, all of which would be addressed with medication. AR 287. However, these statements say nothing about any actual work-related functional limitations, let alone the severity thereof. Plaintiff also objects to the fact that the AC fails to mention diagnostic testing perform after 2009, but again fails to show how any of that evidence indicates the presence of limitations more restrictive than those already assessed by the AC. *See* Dkt. 18, pp. 7-8 (citing AR 606, 612, 615, 620); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability"); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (noting "[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the [diagnosed] condition," and upholding finding of non-severity where medical reports were silent as to any limitations that may stem from that impairment).

Plaintiff further argues that diagnostic testing supports the limitations on sitting, standing and walking Dr. Hamill assessed in July 2013. As noted by the AC, however, those limitations were assessed soon after plaintiff had surgery, a fact expressly acknowledged by Dr. Hamill, who noted plaintiff was "currently recovering from surgery." AR 839. The ALJ discounted these limitations on the basis that "there is no indication how long such limitations were expected to

ORDER - 9

last" (AR 314), which given plaintiff's recent surgery was reasonable and proper. AR 314; *see Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months).

    c.    *Dr. Nakashima*

The AC gave partial weight to the opinion of treating rheumatologist, James Nakashima, M.D., because he treated plaintiff for less time than Dr. Hamill, and because of conflicts between Dr. Nakashima 's opinion that plaintiff could perform sedentary work and his earlier opinion that she was more limited than that. *See* AR 314. Plaintiff correctly argues the mere fact that Dr. Nakashima treated plaintiff for a lesser amount of time is not alone a valid basis for discrediting his more restrictive opinion, especially considering he examined plaintiff multiple times over a year and a half. Nevertheless, the Court finds this error to be harmless, given that the AC gave another valid reason for discrediting Dr. Nakashima's more restrictive opinion.

Dr. Nakashima found plaintiff's overall work level to be "severely limited" in December of 2007, and to be subject to certain additional functional restrictions. AR 272. In October 2008, however, Dr. Nakashima reported improvements in plaintiff's functioning, such that she was capable of working at the "sedentary" level, again with certain additional functional restrictions. AR 265. Given that "[a] treating physician's most recent medical reports are highly probative," the AC did not err in finding Dr. Nakashima's earlier more restrictive assessment to be inconsistent with his more recent one, and therefore less probative. *See* AR 314; *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001); *Sample*, 694 F.2d at 642; *Morgan*, 169 F.3d at 601.

II.    <u>The AC's Assessment of Plaintiff's Credibility</u>

Questions of credibility are solely within the control of the trier of fact. *See Sample v.*

ORDER - 10

*Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the Commissioner's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan*, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the Commissioner must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The Commissioner "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the Commissioner may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The Commissioner also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

Plaintiff argues that the AC erred by failing to make specific findings stating clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms. *See* Dkt. 18, pp. 11-18. The AC found plaintiff not to be fully credible for several reasons:

ORDER - 11

inconsistency with daily activities, inconsistency with statements from plaintiff's mother, inconsistency with the medical evidence, lack of work history, and dishonesty about substance abuse.[2] *See* AR 316.

First, the Court finds the AC properly discounted plaintiff's testimony regarding her subjective complaints because of its inconsistency with the medical evidence in the record. As discussed above, the AC properly determined that evidence did not support greater limitations than those included in its RFC assessment. It is true that a claimant's pain testimony may not be rejected "*solely* because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (*quoting Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (*en banc*)) (emphasis added); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the AC provided further valid reasons for finding plaintiff not to be credible.

For example, plaintiff's credibility was properly discounted due to the lack of a significant work history and dishonesty about drug use. *See* AR 375-76. Plaintiff argues these reasons are not clear and convincing, because diagnostic tests have shown why she could not work at least since the filing of her application for disability benefits, and because she has not failed any drug screen since she last did so in 2007. However, plaintiff's argument still fails to address why she does not have an extensive work history prior to the alleged onset date of her disability. *See Thomas*, 278 F.3d at 959 (ALJ properly found extremely poor work history and

---

[2] Defendant asserts that the doctrine of the law of the case should apply here, arguing that plaintiff was already found not to be credible in this Court's previous order and the issue should not be reopened. *See* Dkt. 22, pp. 15-19. Application of the doctrine of the law of the case is discretionary. *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991) (doctrine merely expresses practice of courts generally to refuse to reopen that which has been decided, and is not limitation of courts' power). Given that the AC itself addressed the credibility issue and in light of the fact that applying the doctrine here would not serve the public policy behind it – i.e., the need to stop endless litigation (*see Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002)) – the Court declines to apply it. Still, regardless of its applicability, as discussed below the AC gave valid reasons for discounting plaintiff's credibility.

ORDER - 12

lack of propensity to work in lifetime negatively affected claimant's credibility regarding her inability to work). Also, plaintiff's argument that she has not been found to be dishonest about drug use since her last failed drug screen, does not negate the fact that she has a history of lying and being less than candid. *See Smolen*, 80 F.3d at 1284.

Accordingly, although the other reasons the AC provided for discounting plaintiff's credibility may not have been proper, this does not render the AC's credibility determination invalid, because it provided other valid reasons for doing so that are supported by substantial evidence in the record. *Tonapetyan*, 242 F.3d at 1148; *see Bray v. Commissioner of Social Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

III.     The AC's Evaluation of the Lay Witness Evidence in the Record

Plaintiff argues that the AC erred by failing either to credit the limitations found in a statement by Wilma Anderson, plaintiff's mother, or to offer germane reasons to discredit it. The AC did not determine the credibility of Ms. Anderson's statement or discuss its incorporation into the RFC.[3] This omission is error. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (lay testimony concerning claimant's ability to work is competent evidence and cannot be disregarded without comment).  However, this error is harmless.

Plaintiff argues that had the statement been credited, the AC would need to incorporate the functional limitations the statement implies into its RFC. However, plaintiff fails to argue with any specificity what functional limitations implied by the statement have been rejected or ignored. *See Carmickle*, 533 F.3d at 1161 n.2 (reviewing court need not address issues not

---

[3] The AC does discuss Ms. Anderson's statement but only in the context of determining plaintiff's credibility. *See* AR 316.

ORDER - 13

argued with any specificity in the briefing). Furthermore, the RFC assessed by the AC is not inconsistent with the limitations described in Ms. Anderson's statement. The greatest limitations in Ms. Anderson's statement are that plaintiff can only walk one block without resting, cannot do house or yard work, cannot lift more than 25 pounds, and may take all day to do laundry. *See* AR 76-84. These limitations are not inconsistent with the AC's restriction to sedentary-level work with additional restrictions including limitations on lifting, walking, and pushing or pulling. *See* AR 317. Therefore, any error in not discussing Ms. Anderson's testimony is harmless, as it would not have affected the disability determination. *See Molina*, 674 F.3d at 1115.

IV.  The AC's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the Commissioner must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the Commissioner must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In

ORDER - 14

assessing a claimant's RFC, the Commissioner also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

Here, the AC found plaintiff had the RFC to perform:

> . . . sedentary work as defined in 20 CFR 416.967(a), with the capacity to occasionally lift and carry 10 pounds occasionally and less than 10 pounds frequently; work requiring overhead reaching bilaterally should be avoided; standing or walking no more than 2 hours in an 8-hour workday, sitting up to 6 total hours in an 8-hour workday and must be permitted to alternate between sitting and standing at will; no climbing of ladders, ropes or scaffolding. Additionally, the claimant is limited to occasionally twisting, rarely stooping or crouching, and occasionally pushing and pulling with both arms.

AR 317. Plaintiff argues that given the AC's harmful errors alleged above, the RFC assessed by the AC is incomplete. Because as discussed above the AC did not commit any harmful error, here too the AC did not err.

VII.    The AC's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the Commissioner must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett*, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e). This can be established through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock*, 240 F.3d at 1162; *Tackett*, 180 F.3d at 1100-1101.

The Commissioner's findings will be upheld if the weight of the medical evidence supports the hypothetical posed. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the description of the

ORDER - 15

claimant's disability given to the vocational expert "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins*, 261 F.3d at 857.

Here at step five, the AC found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, based on the testimony of the vocational expert provided in response to a hypothetical questions in turn based on substantially similar functional limitations as were included in the ALJ's RFC assessment. *See* AR 317, 328, 336. Plaintiff asserts that in light of Dr. Hamill's July 2013 opinion, the AC's step five determination is erroneous. But as discussed above, the AC properly discounted that opinion. Plaintiff also faults the AC for simply using the Grids to find her capable of performing other jobs. But the AC did no such thing, instead expressly relying on the testimony of the vocational expert to so find. *See* AR 317. Thus, no error has been shown in regard to the AC's step five determination.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 21st day of May, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 16